# Paul Henry Mallet Prevost, plaintiff in error *against* Francis Nicholls.

Where the substantial merits of a case have been tried on a feigned issue, court will amend a clerical error, though after error brought.

It cannot be assigned for error, that the adverse party has renounced a matter agreed on for his own benefit.

Executors or administrators cannot vary the rights of creditors as to their shares of the assets. Liens on the estates of decedents, attach from their death.

WRIT of error to the Common Pleas of Berks county.

It appeared by the record returned, that a suit had been brought *by James Wilson, esq. against John Lewis Bard, in the same court; and that on the 18th May 1798, by consent, all matters in variance between the parties were referred to Valentine Eckert, Jacob Bower, Rees Moore, Daniel Buckley and Samuel Morris, or any three of them; and it was agreed, that the names of Ann Bard and Robert A. Farmer, administrators of J. L. Bard, deceased, should be inserted as defendants.

On the 9th August 1798, the referees reported the sum of 12459l. 10s. 9d. due to the said James Wilson, from the estate of the said J. L. Bard, deceased, 5380l. whereof, (being the consideration money for the lands purchased by the said J. L. Bard, of the said J. Wilson,) they awarded to be paid agreeably to the terms of sale, and the remainder to be paid in specie. And they further awarded, that on payment of the said sum of 12459l. 10s. 9d, by the said defendants, the said J. Wilson, his heirs,

[Prevost, in Error, *v.* Nicholls.]

executors or assigns should convey the premises so purchased, to the heirs of the said J. L. Bard, in fee, or otherwise complete the same. The said report was read in court, and confirmed *nisi;* but afterwards on motion and exceptions filed, *curia advisare vult.*

On the 17th December 1798, the report was confirmed absolutely, and judgment *nunc pro tunc,* [Mr. Wilson having died on the 21st August 1798,] with stay of execution, till a deed be produced and filed in the Court of Common Pleas agreeably to the report; and till the court shall adjudge that it conveys a fee simple in the premises to the heirs of the said J. L. Bard, according to law.

Whereupon the administrators of Bard brought a writ of error, returnable December term 1799, in the Supreme court; and on the 28th March 1801, after argument, the judgment of the court below was affirmed in this court.

John Rainey Bard, and the aforesaid P. H. M. Prevost, also obtained judgment in the said Court of Common Pleas on the 8th August 1798, upon the report of referees against the administrators aforesaid, of the said J. L. Bard; and the aforesaid Francis Nicholls, the defendant in error, became a purchaser under the sheriff's sale of the Birdsborough estate for 7020l., (which had formerly been contracted for by the said J. L. Bard, with the said J. Wilson,) founded upon that judgment, he having previously bought in the judgment obtained by Wilson. Nicholls hereupon moved the Court of Common Pleas, for a rule directing the sheriff to execute a deed to him for the Birdsborough estate, upon his entering satisfaction for 7020l. the amount of the purchase money, deducting the costs due to the sheriff, and he the said Nicholls, paying the same. Upon which an agreement took place, that an amicable action on the case should be *entered by the said Francis Nicholls, against the said [\*481 P. H. M. Prevost, as of April term 1801, in the said Court of Common Pleas; that the plaintiff should declare against the defendant upon a wager between the parties, respecting the right to receive the monies arising from the sale of the said estate, the plaintiff alledging that the same should be paid to the proprietor of the judgment of Wilson, against the administrators of J. L. Bard, (which proprietor it was admitted was the said plaintiff,) until the amount of that judgment was satisfied, the defendant denying the right of the said proprietor to receive such money; that an issue should be thereupon joined, so as to obtain a decision of the question whether the said proprietor is so entitled or not; and that it should be tried by a special jury.

The plaintiff declared on a wager of 200 dollars respecting a judgment entered by the administrators of J. Wilson, against the administrators of J. L. Bard, whether the proprietor thereof was entitled, &c.

The cause came on to trial at Reading, on the 5th August 1803, when the counsel for the plaintiff produced in evidence a

[Prevost, in Error, *v*. Nicholls.]

report of referees in an action in the aforesaid Court of Common Pleas of Berks county, in which J. Wilson, esq., was plaintiff, and the administrators of J. L. Bard, were defendants, in the words following, (*prout* report,) on which said report the judgment of the said court was entered in the words following, (*prout* indorsement on the report,) and also gave in evidence the record of the removal of the said suit by writ of error into the Supreme Court, (*prout* record annexed,) and that the sales of the Birdsborough estate amounted to 7020l., and rested there. Whereupon the counsel of the defendant offered evidence to prove the terms of the sale of the land mentioned in the said report, as having been purchased of J. Wilson by the said J. L. Bard, and also to prove the quantity of land so purchased, and the sum to be given therefor. And the said defendant by his said counsel, offered evidence to prove, that the said J. L. Bard, was in possession of the said tract of land under the said agreement of sale, made valuable improvements on the same, and continued in the uninterrupted enjoyment and possession of the same till his death. And the said defendant by his counsel aforesaid, offered evidence to prove, that the purchase money due for the said land, was tendered agreeably to the terms of sale, and has since been paid into the said court. But to this the counsel for the said plaintiff objected, that it was not competent for the defendant to give such evidence in the said issue, as tending to draw into question and controversy the said award and judgment so offered in evidence by the plaintiff ; of which opinion was the court, *and overruled the said evidence. Whereupon the bill of exceptions was tendered, sealed and signed by the justices.

*482]

General errors being assigned, and in *nullo est erratum* pleaded thereto, the same were fully argued by Messrs. Ingersoll and Lewis for the plaintiff in error, and by Messrs. E. Tilghman and Hopkins for the defendant.

Three points were made by the plaintiff's counsel.

1. The judgment was obtained by Mr. Wilson himself on the report ; but the declaration is framed on a wager, whether the proprietor of the judgment entered by the administrators of J. Wilson was entitled to the money on the sales. This does not correspond with the agreement to enter the amicable action. Evidence improperly received or rejected, is error. Runn. 376, 378. And all errors apparent on the record may be taken advantage of, though not contained in the bill of exceptions. 5 Co. 37, b. Bac. Abr. Error K. Mall. Mod. Ent. 228, 276.

2. Though the plaintiff below obtained a verdict and judgment thereon, he was not entitled to recover. There was a *cesset executio* on the final judgment of J. Wilson, until a deed should be produced and filed in court, and approved of by the justices thereof. No evidence of this kind was offered on the trial.

[Prevost, in Error, *v.* Nicholls.]

3. The evidence offered by the defendant below, which was overruled, did not tend to draw in question the former award and judgment, but was in strict conformity thereto. The report mentions the terms of sale, but is silent as to what they were: but it is expressed, that the 5380l. should be paid according to the original contract, and the residue of the sum found due in specie. This clearly shews that according to the first agreement, the former sum might be paid in something distinct from specie, in the bonds or notes of Mr. Wilson, which were at the time in a state of depreciation. What rational ground could be assumed, to induce the court to overrule evidence adduced to shew that the administrators of J. S. Bard had complied with his contract, and had actually lodged the whole purchase money in court? The improvements made by Bard in his life time, might also form a material consideration, when the price of the lands was much increased thereby.

Mr. Wilson can have no lien beyond his purchase money; if that has been paid, or tendered, and lodged in court, according to the terms of sale, the assignee of his administrators can only come in for the remaining 7079l. 10s. 9d., as other creditors by simple contract. On the death of J. L. Bard, the liens of his creditors attached, according to their dignity. Here there is a deficiency of assets, and the question is, whether the proprietor of Wilson's judgment shall sweep away the whole of the money arising on *the sales of the lands? That judgment confers no lien: [*483 it may be conclusive between the parties, but not as to third persons who are interested. Nor can the administrators of Bard, by any agreement whatever, determine the priority of any particular claimant, in derogation of the rights of the general creditors. A judgment may be avoided without a writ of error, by a plea, where the party is a stranger to it. 2 Mod. 308. Cro. El. 199. 11 Co. 42, a. 44, b. Godb. 377.

The counsel for the defendant in error answered—

1. There is no substantial variance between the declaration and the agreement, on which it was founded. J. Wilson died between the first and second judgments, and therefore the final judgment may fairly be said to have been entered by his administrators. The object of the parties was to try the claim of Nicholls under the judgment which he had purchased, and every thing formal, which would contravene that object, must be discarded. But if it was really an error it is not incurable. Here is something to amend by, and the declaration may at this moment be amended. Amendment may be, even after error brought. 4 Dall. 268. 1 Wils. 303. 1 T. R. 782. 3 T. R. 369. 5 Burr. 2730. No exception was taken to want of form at the trial, but the same was conducted on its merits. If it was then supposed, that the judgment offered in evidence was irrelevant to the issue, the objection should have then been made.

2. It does not lie in the mouths of creditors to object, that

the defendant in error has not got a good title. If he is contented with having the equitable interest of J. L. Bard vested in him under the sheriff's sale, and has succeeded to the rights of J. Wilson by buying in the judgment, he takes the lands at his own risk. But as well might it have been urged, that if Mr. Wilson had been in full life, and had purchased at the sale, that it would have been indispensably necessary in the first instance to have filed his deed. His administrators have not taken out execution, but the sheriff has proceeded on the process issued by J. R. Bard and the plaintiff in error to the sheriff.

3. Why was the parol evidence of Prevost offered on the trial, unless to set afloat what had been solemnly settled by the award and judgment? Of what avail was it, on the issue joined in the court below, that J. L. Bard had made valuable improvements on the land? It is clearly settled, that the merits of a judgment cannot be canvassed in another action. 7 T. R. 455. Nay, so far has the policy of the law carried this doctrine, that money passed under compulsory process, though unjustly received, cannot be recovered back in another suit. Ib. 269.

It has been said, that the 5380l. has been tendered and lodged *in court. Admit it, for argument's sake. There is still 7079l. 10s. 9d. remaining of the sum awarded, which, exclusive of interest and costs, payable to the sheriff, would be more than sufficient to discharge the sum for which the lands were struck off. So that it is perfectly immaterial whether the 5380l. was paid or not.

But it is urged, that Wilson's judgment created no lien, and that the rights of other creditors are violated by the verdict. The court are confined to the record, and can take notice only of the parties to the writ of error, who are the only creditors that we know of. No deficiency of assets is stated, nor will it be presumed. Every thing shall be intended in favour of a verdict. 1 Wils. 2.

The question of lien necessarily came before the jury, when they determined the point, that the proprietor of Wilson's judgment was entitled to the money on the sales. It was in fact submitted to them by joint consent; and it was competent to the administrators of J. L. Bard to conclude the other creditors, by their agreement made *bona fide*, to ascertain the claim under Wilson's judgment. It is admitted, that fraud would form an exception, but that is not insinuated here. Creditors cannot interfere with the duties of executors or administrators. 2 Equ. Ab. 253, pl. 10. Endless confusion and litigation would ensue from such usurpations of creditors. Suppose a mortgage not recorded, and a recovery had against the administrators, could other creditors review the correctness of that recovery in a suit against them?

In this instance, the legal estate in the lands sold by contract to J. L. Bard, subsisted in Mr. Wilson at the time of his death, and after his death became vested in his heirs. The plaintiff in

error now represents the heirs of J. L. Bard, who were devested of their equitable interest in the Birdsborough land; and it would seem that the principle adopted by the court in the case of Mr. Hallowell, who was the trustee of Thomas Greeves, would apply to the defendant in error, and give him a preference of payment in the sum awarded.

TILGHMAN, C. J. took no part in the decision, having formerly been of counsel in the cause.

YEATES, J. delivered the opinion of the court.

It has been assigned for error in this case, that the issue joined between the parties did not correspond with the agreement upon which it was bottomed. The agreement was, that Nicholls, who had become the purchaser of the Birdsborough estate under the sheriff's sale, and who was also the proprietor *of the judgment of Wilson against the administrators of J. L. Bard, should declare upon a wager against Prevost, respecting his right to receive the monies arising upon the sale of the said estate, Nicholls alledging, and Prevost denying such right. The declaration founded thereon, laid the wager at respecting a judgment entered in the Court of Common Pleas of Berks county, by the administrators of J. Wilson, against the administrators of J. L. Bard, whether the proprietor thereof was entitled to receive the money arising from the sales of the estate of Birdsborough.     [*485

This objection goes to the mere form of the feigned issue; and in such a case, the court would be very liberal as to granting amendments where the real merits of the controversy have been fairly tried. The report of the referees was filed in the Common Pleas on the 9th August 1798, and confirmed *nisi* in the life time of Mr. Wilson; but upon exceptions being filed, the court continued it under advisement. On the 17th December following, the report was confirmed absolutely after the death of Mr. Wilson, and judgment entered *nunc pro tunc*. Correctly speaking, the judgment was entered in his name; but in truth it was finally obtained by his administrators. The substantial issue was thoroughly understood by the parties and their counsel on the trial; no objection was made to the judgment being received in evidence, on account of the variance; nor was any motion for a new trial made on this ground. Under these circumstances, we do not apprehend that this clerical oversight would warrant us in pronouncing it to be an incurable error.

It has also been contended, that it appears on the face of the record, that the proprietor of the judgment was not entitled to the amount of sales, inasmuch as it was part of the judgment of the Court of Common Pleas founded on the award of the referees, that there should be a stay of execution till a deed should be produced and filed in that court agreeably to the report, which should be adjudged to convey a fee simple in the premises to the heirs of the said J. L. Bard, according to law;

and that it does not appear that such deed has been produced or filed.

The answer given by the counsel of the defendant in error appears satisfactory to us. The lands, and all the interest of J. L. Bard therein, became vested in Nicholls by due process and operation of law. He became thereby the *hæres factus* and it was competent to him alone to demand of the legal representatives of Mr. Wilson the fulfilment of the condition imposed on them. *Volenti non fit injuria.* He might dispense with this act on their part ; and might well conceive, that by uniting his interest under the sheriff's sale, with his proprietaryship of the judgment, he combined the equitable title of Bard with the *strictly legal title of Wilson. But it never can *486] be assigned for error against one of the litigant parties, that he has thought proper to renounce a right introduced for his own benefit.

A more formidable objection arises on the bill of exceptions, which is not worded with great accuracy or precision. But we are confined to the facts therein set out, and are not allowed to travel out of it. " The defendant below offered evidence, to " prove that the purchase money due for the said land, was ten- " dered agreeably to the terms of sale, and had since been paid " into the Court of Common Pleas," which was overruled, as tending to draw into question and controversy the award and judgment before shewn in evidence.

The referees reported the sum of 12,459l. 10s. 9d. due to J. Wilson from the estate of J. L. Bard, deceased, 5380l. whereof (being the consideration money for the lands purchased by the said J. L. Bard of the said J. Wilson) they awarded to be paid agreeably to the terms of sale, and the remainder to be paid in specie. The report is silent as to the terms of sale. We know not whether the 5380l. was stipulated to be paid in the notes of Mr. Wilson, or in paper of another description ; but whatever it was, it is contradistinguished from specie in the award. It is fully established, that the merits of a judgment cannot be overhauled or canvassed in another suit ; and that a different doctrine would render the administration of the law a circle without end. At the same time, it is clear that the production of testimony, evincing that the whole or part of a judgment has been satisfied, does not derogate therefrom, or draw in question its propriety. If the plaintiff in error was desirous of shewing, that the administrators of J. L. Bard had satisfied part of the judgment, it became indispensably necessary that he should prove the terms of sale *aliunde*, the report not specifying them. It follows of course, that if the non-payment of the 5380l. was made a ground of recovery by the plaintiff below on the feigned issue, the testimony offered by the defendant below should have been received upon every principle of distributive justice.

The counsel of the defendant in error admit the force of this reasoning ; but contend that they were entitled to recover on the

feigned issue independently of this 5380l., which being deducted from the sum awarded of 12,459l. 10s. 9d., would leave a balance of 7079l. 10s. 9d. still due to him, as the owner of Mr. Wilson's judgment.   This sum, with the arrears of interest due thereon since December 1798, when the report was confirmed, and the sheriff's fees added, which Nicholls offered to pay, would greatly surmount the 7020l. which he bid for the premises, and consequently there would be a fund over which he had a controul, more than sufficient to pay the purchase money, *agreeably to his motion in the Court of Common Pleas, even dropping the 5380l. 　　　　　　　　　　　　　　　　　　　　[*487

These observations have great weight, provided a previous point is established, that the judgment of Wilson gives a priority of payment as to this 7079l. 10s. 9d., and the accruing interest out of the assets of J. L. Bard, deceased.   There can be no doubt of the pre-existing lien of Mr. Wilson as to 5380l., the purchase money of the Birdsborough estate.   The legal estate remained in him, and he was not bound to convey the same under the articles, until the stipulated consideration was fully paid and satisfied.   But under our present view of the question, this sum cannot form any part of our consideration.

The defendant's counsel insist, that the 7079l. 10s. 9d. became entitled to a preference of payment, by the act of the administrators of Bard, and the report and consequent judgment thereupon; and that the question of lien was expressly submitted to the jury on the trial of the feigned issue, who have found in its favour.   They assert that it was competent to the administrators to conclude other creditors (though it is said the record affords no evidence of their being such creditors) as to the extent of the lien under Wilson's judgment; and unless this can legally be done, endless confusion must ensue.   It is further alledged, that nothing is stated on the record from which can be collected a deficiency of assets.

The 14th section of the act of 19th April 1794, 3 Dall. St. Laws 527, prescribes the mode in which the debts of decedents shall be paid.   After enumerating those debts which are intitled to a priority, it directs an average of the remaining assets amongst the other creditors *pro rata*.   And in the case of Philip Wootering against the executors of gen. Walter Stewart in December term 1799, it was determined by this court on full argument, that a judgment obtained against the executors or administrators of a deceased person gained no priority as to payment; and that the dignity of the debt when the party died, formed the sole characteristic feature of distinction.   This appeared to accord with the policy of the government from the earliest times; and it made no difference as to creditors, whose liens attached only on the death of the testator or intestate, whether the assets arose from the sale of real or personal estate. Though the personal representatives of a deceased person might

[Prevost, in Error, *v.* Nicholls.]

by their *bona fide* acts, conclusively define the extent of claim of the different creditors ; they could not vary the vested interests of the different creditors, nor change the order of payment ; for this would militate against the express provisions of the law.    Neither did the report of the referees, nor the judgment of the court go further, than to ascertain the amount of *488] Mr. Wilson's demand ; *they left the order of payment to be fixed by law, according to the nature of the debt. Nor·could the jury by their verdict violate the provisions introduced for the benefit of the general creditors.    It is perfectly clear, that there are at least two adverse creditors to the defendant in error, and that there is a deficiency of assets ; because the record states the sheriff's sale of the Birdsborough estate to have been founded on the judgment of Prevost and others against the administrator of J. L. Bard ; and the present controversy is, who is legally entitled to the money produced by the sales.    In determining this question, it can be of no moment which of the judgments is first in point of time against the administrators.    Priority of payment as I have already mentioned, must depend on the nature of the demand, as it existed at the time of the death of Bard.

But the counsel of the defendant in error have assimilated the present case to that of Frazier's *et al.* lessee *v.* Hallowell, upon which this court expressed their opinions in September term 1805 ; and have contended, that Mr. Wilson not having parted with the legal estate in the lands, remained the trustee of Bard, which drew after it a lien on the whole sum due to him.    The majority of the judges who decided for the defendant, went on the ground, that from the circumstances of the case, it was fairly to be presumed, that Mr. Hallowell lent the notes to Greeves on the security of the mortgage taken in his own name ; and especially as no consideration was stated or contended for, which might have induced Mr. Hallowell to give his notes.    But in the present instance, it is admitted, that the balance of 7079l. 10s. 9d. arose from a course of mutual dealings between Wilson and Bard ; which therefore excludes the presumption of the former regarding the strictly legal title ·in himself as a plank of indemnity.    Thus materially distinguished, we think the decision in the former action cannot influence the question before the court.

It appears that if the defendant in error relied on the 5380l. as a ground of recovery, the court below should have received the testimony offered of the terms of sale, and the tender made pursuant thereto.    And if this ground was relinquished, and recurrence had to the 7079l. 10s. 9d. he had no superior lien as to this last sum on the assets of J. L. Bard deceased, to other creditors, whose demands were of equal dignity with his own at the time of Bard's death, which would have warranted a recovery on legal principles.

[Moffat's Adm'r *v.* Israel.]

The judgment of the Court of Common Pleas is therefore reversed.

Cited in 9 S. & R. 284 in support of the decision that, an omission in a *levari facias*, of the command to levy the debt, is a clerical mistake, and may be amended,. after error brought, by the court above.

Cited in 1 Rawle 294 ; 4 Watts 429 to show that no preference is obtained by ᴖ᙮tering a judgment against the estate of a person deceased.

Referred to in 2 Rawle 259.

Cited in 5 Watts 367.

Cited on the question of amendment in 1 W. & S. 370.