IN CHATHAM SUPERIOR COURT, JULY, 1831.

### S. J. BOMGAUX *vs.* J. V. BEVAN.

The exceptions in favor of judgments, mortgages and executions contained in the act of 1792, prescribing the priority to be observed by executors and administrators in the payment of debts due by the estates of their testators or intestates, apply only to such executions, judgments and mortgages as existed in the lifetime of the testator or intestate and had created a lien upon their estates.

If there be bond-debts, and the executor be sued upon a simple contract debt, he may neither pay it, nor suffer the plaintiff to recover in his action; for if he do, and he have not assets besides to satisfy the debts due upon bonds, he must satisfy so much out of his own estate as he has so paid, or suffered to be recovered from him; for in case of an action brought, he is to plead and set forth these debts

THIS case presents itself upon the following statement of facts. An action was commenced by the plaintiff against the defendant as the administrator *de bonis non* of William Craig deceased, returned to the July Term, 1827, of the Inferior Court of Chatham county. Sundry creditors of William Craig had commenced suits against John McNish the executor of Craig; upon whose death and the grant of administration *de bonis non* to Bevan, they sued out *sci. fas.* against Bevan, and obtained judgments at an earlier period than the present plaintiff. The debts were of equal degree, being all promissory notes, and were all specially pleaded in each action respectively. The debt due to Bomgaux was pleaded as an outstanding unsatisfied debt in equal degree in the *sci. fas.* and the notes upon which they were brought were pleaded to Bomgaux's action. The jury rendered the following verdict, "We find for the plaintiff, &c. payable out of such assets as now are, or shall hereafter come to the defendant's hands to be administered, ratably with debts of equal degree in the plea of the defendant pleaded." The administrator subsequently refused to let in the present plaintiff for his proportion of the assets admitted by the plea to be in the defendant's hands, but distributed the funds among the judgments recovered in the *sci. fa.* cases. The present action is brought to charge the administrator with a *devastavit.* A verdict was taken subject to the opinion of the court.

In deciding this question the attention of the court is necessarily directed to the 8th section of the provincial act of Georgia, passed in 1764, which directs "That no administration of intestate estates shall be granted to a principal creditor or creditors, but upon special trust and confidence for all and singular the creditors; and that all debts of an equal nature shall be paid in average and proportion as far as the assets will extend, and that no preference shall be given among creditors in equal degree;" and also to the 10th section of the act of the legislature of Georgia, passed in 1792, which prescribes the order to be observed by executors and admin-

istrators, with reference to priority in the payment of debts of their testator or intestate—and which also declares that no preference shall be given among creditors in equal degree *except* in cases of judgments, mortgages that have been recorded, from the time of recording, and executions lodged in the sheriff's office, the oldest of which shall be first paid.

In order to a right understanding and just construction of these acts it seems to the court necessary to consider what the law was anterior to their enactment. By the law of England, which obtained here, a rule of legal priority was prescribed for the payment of the debts of a deceased person, which the executor or administrator was bound at his peril to observe, and by which he was inhibited from paying a debt of inferior classification in preference to one of higher dignity in the prescribed order. But it was permitted him among debts of equal degree to give a preference by paying one creditor to the entire exclusion of another of whose debt he had not been notified by the commencement of a suit. And even after an action commenced, he might give a preference by confessing judgment upon a suit subsequently brought. Apart from this voluntary agency on the part of the legal representative in contributing to a preference among creditors in equal degree, it was competent to the creditor himself to obtain this preference by the exercise of superior vigilance in resorting to legal or equitable process. The creditor who first commenced his action and obtained his judgment at law (and a decree in equity was available to the same end) secured a preference. In the order established by law, exclusive of the rights of the crown, debts of record, among which judgments ranked the highest, were entitled to priority, and the executor or administrator was bound at his peril to take notice of them —if he paid debts of an inferior character, he was guilty of a devastavit. As the judgment however created no lien upon the personal property of the testator or intestate, as among judgments, the first execution issued obtained a preference. To protect himself against a devastavit, it is necessary that the executor or administrator specially plead such judgments as may have been obtained against his testator or intestate in his life-time—and if he be sued upon a simple contract debt, he must plead outstanding unsatisfied debts by specialty, the omission to do which will deprive him of the right to plead a judgment so obtained upon simple contract to an action after-brought upon the specialty ; because the omission to plead the specialty debt to the action on simple contract, is an admission of assets as to the simple contract debt. It has already been remarked, that a decree in equity was as effectual to the securing a preference among creditors in equal degree as a judgment at law ; for although the executor could not plead such a decree to an action brought, yet after a decree to account, a creditor proceeding at law would be en-

CHATHAM, July, 1831.

BOMGAUX
v.
BEVAN.

upon specialties, and to say that he hath *no more* than what is sufficient to satisfy them, and thereby he shall bar the plaintiff in his action.

The nature of the debts at the time of the testator's or intestate's death is to regulate the priority of their payment, by the executor and administrator, and no preference can be created either by greater diligence on the part of the creditor or by the acts of the executor or administrator himself.

joined from going on to judgment, upon mere motion, without filing a new bill, and after a final decree he would be entitled to come in for his proportion of the assets. In marshalling which a court of equity follows the rule of law ; if there are judgment creditors existing against the testator in his life-time, their priority is preserved, and the remaining assets distributed in a course of administration. The court is aware that it has been said that a Court of Equity in England will distribute the assets ratably among all the creditors without regard to the order of dignity prescribed by law. This is the opinion of Sir James Mansfield, 1 Campb. Rep.    and after a review of the English cases acquiesced in by a distinguished Chancellor in America, 4 John. Ch. Rep.

Be this as it may, it remains to be determined whether a Court of Equity in Georgia can so far disregard the positive injunctions of a statute as to prescribe an order at variance with its provisions. Thus we perceive that under the English law which was of force in Georgia, previously to the acts referred to, the debts of a deceased person were paid in the order of priority as they stood at the death of the decedent, not liable to be varied either by any voluntary act of the executor or vigilance of the creditor, except in cases of debts of equal degree. Let us now inquire what are the changes introduced by the enactments referred to.

The great and important change, which it is necessary to notice for the purpose of this decision is, that the executor or administrator can no longer give a preference among creditors in equal degree either by voluntary payment, or confession of judgment—and although it may be conceded that the preference spoken of is a voluntary and not a compulsory preference through the medium of the courts, yet is believed, it will be found of important consequence in the law of administration. Based upon the order prescribed by the English law, the act of 1764 commits the administration to a creditor in *trust* for all the creditors—declares that debts in equal degree shall be paid in *average and proportion,* and that no *preference* shall be given among creditors in *equal degree.* The act of 1792 prescribes a new order for the payment of debts, and directs that no preference shall be given among creditors in equal degree, where there is a deficiency in assets, *except* in cases of *judgments,* mortgages, &c. These acts are to be considered as directory to executors and administrators, as furnishing a rule for their conduct from which they may not depart but at their peril. The spirit which animates them, is the spirit of equity and justice. They seek to introduce equality among creditors in equal degree ; to destroy a principle of arbitrary preference which before their enactment had obtained. Why then the exception in favor of judgments, mortgages and executions ? Is it ascribable to the favor which the law allows to superior vigilance ? The race

of diligence, if permitted here, would overturn and destroy that very principle of equality which the legislature intended to introduce, and which is so accordant with equity in the distribution of an insufficient fund. The various creditors whose debts were within the jurisdiction of the ordinary magistrates' courts, would first obtain their judgments in defiance of equal vigilance on the part of a creditor whose demand was of greater magnitude. It is known now to be a common practice, to split up large debts into many separate small notes which are thus taken for the express purpose of bringing them within the jurisdiction of these courts to secure the greater dispatch and facility in collecting them. Next would follow, in the course, the creditors who were enabled to bring their suits within the jurisdiction of the corporation or city courts. And lastly those would attain the goal, who being constrained to come into the higher and more tedious courts had used the same vigilance, but with less propitious result than their more fortunate competitors. In the mean time the assets are constantly diminishing, and the estate deteriorating by being subjected to an overwhelming bill of costs. But this is not the extent of the inequality in this race of diligence. It is competent for an executor or administrator to appeal from the verdict of a petit jury without security, and in some instances it would become his duty to exercise this right. The consequence to the creditor is inevitable, he is postponed whilst others, who started even with him succeed over him. And since the executor *may* exercise this right, he may exercise it *arbitrarily,* and thus give that preference through the medium of the proceedings of the courts, which he is not permitted to do without.

The true cause for the exception, it is believed, will be found in the consideration, that the judgments, mortgages and executions excepted, existed against the testator or intestate in his life time, and had created a lien upon the estate. There is here a vested right which it would be inequitable to divest. The principle of equality could not be made to reach such a case. It is a general rule that a party will not be divested of a prior lien, unless there has been fraud or deception in the transaction. The judgments spoken of in the English law, as constituting a distinct class of debts in the order of payment, are *understood* to be judgments existing against the decedent. In Shep. Touch. 477. it is said after the king is served, the debts due by record, by any judgment had against the *deceased* in any judicial proceeding in any court of record, next, debts due by statutes or recognizances entered into by the deceased. 3. Debts due by obligation, &c. In the order prescribed by the 10th sec. of the act of 1792, it says after debts due to the public, next judgments, mortgages and executions, the oldest first—using the same language employed in the exception, and evidently referring

the excepted case to those judgments, mortgages and executions specified as a distinct class of debts. Will it be argued that under the act of 1799 the judgment creditor has a lien upon all the property of his debtor from the date of his judgment, and that his lien is as effectual whether the judgment be obtained against the executor or the testator in his life time?—Let us examine this question. In England the judgment creditor who issued execution and lodged it with the sheriff, secured a lien upon the property of his debtor equally as efficient as that given here from the date of the judgment. Now will it be contended that by virtue of this lien he could take precedence of specialty creditors? If there be bond debts, and the executor be sued upon a simple contract debt, he may neither pay it, nor suffer the plaintiff to recover in his action; for if he do, and he have not assets besides to satisfy the debts due upon bonds, he must satisfy so much out of his own estate as he has so paid or suffered to be recovered from him; for in case of an action brought—he is to plead and to set forth these debts upon specialties, and to say that he hath no more than what is sufficient to satisfy them, &c. and thereby he shall bar the plaintiff in his action. Touchstone, 478. If after paying debts of superior degree in the plea pleaded, there be a balance, the jury must find the precise amount, or the court cannot enter up judgment, the judgment must be entered up for the precise amount found in the defendant's hands. It is true the judgment creditor in the action against the executor, may obtain an advantage over a specialty creditor, by the omission of the executor to plead, and hence the strictness of the rule by which the executor is bound down to plead in the case of debts of inferior and superior grade. What is the effect of a judgment then obtained subject to such a plea? Surely the debts of superior dignity thus pleaded retain their priority notwithstanding the judgment. The statutes which prescribe the order for the payment of debts inobligatory upon the courts—they are bound to give effect to them, hence it is that when the executor pleads a debt of superior dignity it becomes a bar to the action. But by the statute of Georgia, no preference shall be given among debts in *equal* degree. Are not the courts as much bound to give effect to this provision of the statute? Unquestionably they are—and if the executor shows by his plea that there are debts of equal degree unsatisfied, the verdict and judgment will direct, as in this case, a ratable distribution. From the death of the testator, these notes were all of equal dignity, and were by law to be paid *pari passu.* The court has no power to vary the order. The effect of a judgment thus obtained would only be to ascertain the amount of the debt if upon open account, to bring forward the property to a sale, to push the other debts in equal degree and claim the proportion to which it is entitled. If the reverse of this were true,

it would follow, that a judgment obtained upon simple contract would, by virtue of the lien created, ride over and postpone a debt by specialty; and if this were true, it would draw after it, the right of the administrator or executor to retain his own debt in preference to all others, instead of limiting the right as it is understood to be, to a preference among debts in equal degree.   We have seen that in England a court of equity may marshal the assets among creditors in equal degree, and prevent the preference which the English law allows to him who commences the first action, or obtains the first judgment.   By our act, an executor may do here what a court of equity does in England.   Nay, he is required to do it.   And in the absence of pre-existing liens, if he suffers a preference to be gained contrary to the directions of the act, he renders himself liable to a devastavit.

The court is aware that from the view taken of these acts it must follow, that the ancient and well established doctrine of retainer must undergo a change, that the executor or administrator, instead of retaining in exclusion of other creditors in equal degree, must ratably divide with them.   This court is also aware that a different view of this subject has been taken by one of its predecessors, upon the weight of whose opinion it might securely have rested, and from whom it cannot differ but with the most distrustful diffidence of its own judgment.   It is a source of unfeigned gratification under such circumstances, to believe, that the conclusion to which the court has felt itself bound to come, however defective and imperfect the course of reflections by which it has been lead to it, is supported by the decisions of sister States upon analogous statutes.   The statute of Pennsylvania prescribes the mode in which the debts of decedents shall be paid, and after enumerating the debts entitled to priority, it directs an average of the remaining assets among the creditors *pro rata*.   Upon this statute it has been determined in Pennsylvania, that a judgment obtained against the executor or administrator of a deceased person gained no priority as to payment, and that the dignity of the debt when the party died, formed the sole characteristic feature of distinction.   Wootering *v.* Executors of Stewart, 1 Yeates, 483.   That though the personal representatives of a deceased person might by their *bona fide* acts conclusively define the extent of claim of the different creditors, they could not vary the vested interest of such creditors, nor change the order of payment; for this would militate against the express provisions of the law.   Nor can the jury by their verdict violate the provisions introduced for the benefit of the general creditors.   Prevost *v.* Nichols, 4 Yeates, 487.

In the case of Scott, Administrator of Patterson *v.* Ramsay, C. J. Tilghman says, "The order of payment was to be according to the nature of the debt at the time of the testa-

CHATHAM,
July, 1831.

BOMGAUX
*v.*
BEVAN.

tor's decease ; and consequently a simple contract creditor obtained no preference by obtaining judgment against the executor." 1 Binn. 221. In ex parte Meason the same judge says, " The right of retainer only placed the administrator in the same situation in which he would have been if the law had permitted him to bring an action. He could not retain against a creditor of *superior* nature, because if he had been allowed to bring an action he could not have recovered in prejudice of such creditor. Apply this principle to the act of assembly, if the administrator were permitted to bring suit against himself, could he recover his whole debt ? He could not, because the act directs that the creditors shall be paid *pro rata.*" 5 Binn. 174.

We find in the statutory provisions of South Carolina upon this subject, literally and verbatim the same expressions as are contained in the two sections of the Georgia acts, to which we have referred.

In the case of Lenoir *v.* Winn, in the decree of the Chancellor, it is affirmed that debts of the same degree, from the death of the intestate, are to be paid in the same order ; and that the administrator cannot retain the whole of his debt, but only in average and proportion with the other creditors. 4 Dess. Eq. R. 65. In the case of Somers *v.* Tidmore, recently decided, it is stated that all the creditors stood in the same degree. The plaintiff, supposing that a judgment recovered would give him a preference, instituted his action against the administrator, and recovered the decree in which the present process is founded, subject to the plea of *plene administravit præter.* The court says " I do not think the plaintiff entitled to any preference, he stood on the same footing with the other creditors at the death of the intestate. They were by law to be paid off in equal proportions, and the plaintiff cannot by obtaining a decree, and thereby subjecting the estate to unnecessary costs entitle himself to a preference over the rest of the creditors. The defendant is at perfect liberty to make an honest and fair distribution of the amount in hand among all the creditors of the deceased. 1 M'Cord's Rep. 270.

In conclusion, the court is of opinion, that the plaintiff Bomgaux is entitled to his proportion of the assets admitted to have been in the hands of the defendant, that the administrator by paying the other creditors to his exclusion has been guilty of a misapplication of the fund, and rendered himself liable in the present action.