Maryland is in nature of a general bankrupt law. 1 Dall. 231. Insolvent laws are local in their nature, and do not bind out of the limits of the state where they were enacted. They differ in every state in the union, and even the bankrupt laws of England were not supposed before the revolution, to extend here, so as to exempt the person of a certificated bankrupt from arrest.

But by the court. Both plaintiff and defendant being acknowledged citizens of Maryland, when the law in question passed, must be bound thereby, having consented thereto, either by themselves or their representatives. As to them, there can be no doubt of its binding force. The present case is precisely the same in principle as that of Harris v. Mandeville before cited. The *lex loci* is peculiarly applicable thereto. It would be highly mischievous, as well as incongruous, that when a debtor has been discharged from his imprisonment by the laws of his own state, a fellow citizen shall follow him to other parts of the union, and there arrest him again by new process.

The defendant must be discharged on common bail.

———————— ·•·•·————————

PHILIP WOOTERING *against* DEBORAH STEWART, BLAIR M'CLENA-CHAN, FRANCIS WEST and WILLIAM TILGHMAN, executors of WALTER STEWART.

Assets arising from the sales of real as well as personal estates of deceased persons, shall be averaged amongst the creditors, after payment of the debts entitled to priority, under the 4th section of the act of 19th April 1794.
The judgment creditor obtains no preference by his judgment against executors or administrators.

On the 19th March, 1798, judgment was entered for the plaintiff, "he to be entitled to his dividend of assets, when ascertained by auditors in the Orphans' Court in case any shall be found." In consequence hereof, the plaintiff issued a *testatum fi. fa.* to Lycoming county, whereupon several tracts of land were levied, and afterwards sold by the sheriff of that county. The plaintiff insisted, that the moneys arising on the sales, after deducting the costs, should be applied to the credit of his judgment.

In December term, last, a rule was made at the instance of the executors, to show cause, why the money levied or to be levied by the sheriff of Lycoming county, either of the real or personal estate of Walter Stewart, on the execution issued in this cause, should not be paid by the sheriff to the prothonotary of this court, to be by him distributed among the creditors of the said Walter, according to the terms on which the judgment was entered, as this court shall hereafter direct. General Walter Stewart died in June, 1796.

Mr. Rawle for the plaintiff, now showed cause against the rule,

and contended that the 14th section of the act of 19th April 1794, (3 Dall. St. Laws 527) directing an ayerage of assets, after payment of those debts entitled to priority, amongst the other creditors *pro rata*, merely respects the personal property and not the lands of the deceased. No creditor will be at the trouble and expense of taking out executions, and searching for lands, whereon the same may be levied, unless he is to receive some particular benefit therefrom. He will not gratis become the agent of the other creditors, to guard their interests by his vigilance. No powers are vested by law in executors, to convert their testator's lands into cash to pay the debts. To effect this, they must possess such authority under the will. It is true, where an intestate leaves real property and lawful issue, but not a sufficient personal estate to pay his debts and maintain his children, the administrator may mortgage the lands for one third of their value, or sell and convey such parts thereof as the Orphans' Court may direct for those purposes. But even this provision is rendered abortive, in the case of an intestate leaving issue, unless there is sufficient property, personal or real, to discharge the debts. No appropriate mode therefore being pointed out by the act, whereby on the deficiency of personal assets, the real estate of a deceased person may be changed into money by the act of the executor or administrator, for the purpose of average amongst creditors of a certain description, it would seem to follow, that the assets to be averaged must be confined to those, which are merely personal.

Mr. W. Tilghman for himself and the other executors, was prepared to answer the foregoing remarks, but was interrupted by the court, who observed, that the doctrine asserted by the plaintiff would totally defeat the true meaning and spirit of the 14th section of the law in question. The object intended to be accomplished was, that after the payment of certain specified debts of a person deceased, other debts should be paid in certain equal proportions in the pound, as far as the *assets* would extend. By the policy of this government, shortly after it became a colony, decedents' real estates became a subsidiary fund for the payment of their debts, and were subjected thereto in the hands of heirs and devisees, and those claiming under them. So far has this principle been carried, that in the case of a sheriff's sale of lands under a *levari facias*, on a mortgage executed by the husband alone after marriage, the claim of dower of the widow has been held to be barred. Why then under this marked system should there be a different rule as to assets arising from the sale of real and personal estate under the provisions of this law? Why should a creditor in the first instance take the whole of

the property to the disadvantage of the rest of the creditors, and in the latter share it proportionably with them ?

The interests of the different creditors will readily furnish a mode whereby the lands of persons who have died with or without wills, may be turned into cash, and the expense attending the same will be naturally disbursed thereout in the first instance. Little danger is to be apprehended from all the creditors refusing their aid to bring about a sale of lands, when they are once assured that it is from those funds they only can expect the payment of any part of their demands.

Let the rule be made absolute.

⁂

GEORGE ALBRIGHT and JOHN ALBRIGHT, plaintiffs in error, *against* lessee of JAMES M'GINNIS.

The 11th section of the act of 3d April, 1792, does not apply to cases of lands improved at the time of passing that law.

EJECTMENT of lands in Cumberland county, tried at Carlisle, wherein the following bill of exceptions was sealed.

" And now on the trial of this cause, to wit, on the 3d day of November, *anno domini* 1797, the counsel for the plaintiff gave in evidence, 1st, A warrant under seal from the land office of Pennsylvania, granted to the lessor of the plaintiff for     acres, dated 9th December 1793, (*prout* warrant;) 2d, Copy of the return of a survey made in pursuance of the said warrant, (*prout* survey;) 3d, Decision of the Board of Property in favor of the said James M'Ginnis, the lessor of the plaintiff, dated January 2d, 1795, (*prout* decision;) 4th, A patent granted to the said James M'Ginnis, dated, &c., (*prout* patent.)

" And the counsel on the part of the defendants, in order to maintain their plea of not guilty, offered testimony to prove that an improvement had been made by one of the defendants on the land in dispute in the month of March 1791, and continued to the present time ; that John Albright, one of the defendants, obtained a warrant from the land office of Pennsylvania for 100 acres of land, including his improvement and the land in question, dated August 15th 1794, a copy of which warrant under the seal of the land office was offered in evidence, (*prout* warrant,) together with a receipt from the receiver general for the payment of the purchase money of the said 100 acres of land, at 10*l.* per hundred acres, with interest from the month of March 1791, (*prout* receipt.) And testimony was further offered on the part of the defendants, that a survey was made in pursuance