## Brown *against* Webb.

A *scire facias* to revive a judgment after the death of the defendant, must be sued against his executors or administrators : they must be made parties to it. If sued only against the heirs in possession of the inheritance, it is erroneous.

WRIT of error to the court of common pleas of *Lancaster* county. To January term 1824, *Jeremiah Brown* obtained a judgment against *Jonathan Webb* for 512 dollars. Subsequently *Jonathan Webb* died intestate, seised of real estate, of which *William Webb, Peter W. Webb* and *Rachel Webb,* three of several children, were in possession, when this *scire facias* issued against them to show cause why they should not become parties to the said judgment, and why the plaintiff should not have execution of the lands of the decedent in their possession. The defendants plead payment, with leave, &c. Replication, *non solvit,* issue.

The defendants, after the jury was sworn, offered to plead specially to the jurisdiction of the court and to the sufficiency of the parties; but both were rejected by the court below because they were out of time. The question turned alone upon whether the plaintiffs could recover at all upon a *scire facias* against the heirs, without joining the personal representatives. By the direction of the court below the plaintiff recovered, and the defendants sued out this writ of error.

*Champneys,* for plaintiff in error, cited, *Act of Assembly of* 1798, respecting the revival of judgments; 2 *Saund.* 210, *in note;* 3 *Bac. Ab.* 114, 115; 1 *Chit. Pl.* 435, 452; 7 *Serg. & Rawle* 328.

*Montgomery,* for defendant in error, cited, *M'Lanahan* v. *M'Lanahan,* 1 *Penns. Rep.* 113; 16 *Serg. & Rawle* 432; 2 *Saund.* 7; 7 *Serg. & Rawle* 328.

The opinion of the Court was delivered by

KENNEDY, J.—Several errors have been assigned in this case, but as the court is of opinion that the proceeding and judgment had against the plaintiffs in error in the court below cannot be supported by the laws and practice of this state, it becomes unnecessary to notice them.

[Brown v. Webb.]

Although the ground upon which this court considers the proceedings and judgment in this cause erroneous, has not been formally assigned for error according to a rule which we have adopted ; yet this rule, as chancellor *Kent* observes in *Palmer et al.* v. *Loriland et al.*, 16 *Johns.* 353, 354, " was only intended to be applied to objections, that the party may be deemed by his silence to have waived, and which when waived, still leave the merits of the case to rest with the judgment. But if the foundation of the action has manifestly failed, we cannot, without shocking the common sense of justice, allow a recovery to stand." Or if, for want of a proper party to the proceeding, great injustice may be done to the interests and rights of others, it would be equally shocking to permit the proceeding and judgment to be carried into execution.

By the act of assembly passed in 1705, lands in this state were made goods and chattels for the payment of debts. They were made liable to be taken in execution and sold as such, unless the rents, issues and profits thereof were found sufficient beyond reprizes to pay the amount of the execution within seven years.

Until 1806 they might have been seized in execution under a *fieri facias*, although the defendant had personal property of any value above the amount of the execution ; when the legislature restrained the seizure of lands as long as the defendants produced personal property sufficient to satisfy the executions. So completely are lands considered goods and chattels for the payment of debts, that they may be taken in execution under a *fieri facias*, which directs the sheriff to levy on the *goods and chattels*, &c., without mentioning lands specifically. See *Andrew* v. *Fleming*, 2 *Dall.* 93. Upon the same principle of lands being assets, the same as goods and chattels, for the payment of debts, it has been held, that where the land of a deceased debtor has been sold under an execution on a judgment against the administrator, the money arising from the sale must be distributed according to the order prescribed for the payment of the debts of decedents by the act of 1794, in the case of personal assets. See *Agricultural Bank* v. *Stambaugh*, 13 *Serg. & Rawle* 299. And that under the fourteenth section of that act, the assets arising from the sale of the real as well as personal estate of decedents, must be averaged among the creditors, when both collectively are insufficient to pay the whole amount of the debts. *Wootering* v. *Stewart et al.*, 2 *Yeates* 483.

As long as there are personal assets sufficient to pay the debts of the deceased debtor, it would be wrong, and, it appears to me, would be contrary to the spirit of the act of 1806, as well as to the settled principles of practice in this state, to resort to, or to take the lands of the deceased in execution for the payment of his debts. And upon this principle it is, and not unless the personal assets shall be shown by the administrators or executors to be insufficient for the payment of the debts, that the orphan's court of the county in which the real estate lies is authorized to decree a sale of it, or as much of it as may be

[Brown v. Webb.]

sufficient to supply the deficiency in the personal estate to meet the payment of the debts.

The form of the judgments rendered against administrators and executors is, " *de bonis*," &c., omitting the words " *et terris*," which, I think, are rarely if ever inserted ; upon which writs of *fieri facias* are issued, and the land as well as the personal property of the decedents are taken in execution and sold.    It has been the practice in many counties of the state ; and I would have supposed the universal practice throughout, were it not for what is said in the case of *Wilson* v. *Hunt's Executors*, 1 *Peters's C. C. Rep.* 442, *in note*, that on the plea of no assets, where the plaintiff does not choose to controvert the plea, or in case he does, and there be a verdict for the defendant, for the plaintiff to pray judgment *de bonis quando acciderint*, &c. ; and upon this judgment, when entered, if there be lands of the deceased, to take out a writ of *fieri facias*, and to levy upon them without further process of any kind.    The plea of no assets is considered as being confined, and applying only to personal assets, and not as militating against the idea of there being real assets.    The words " *quando acciderint*" are to be considered as having a reference to personal assets merely, and as excluding all idea of there being any in the hands of the defendant at the time of entering the judgment. With respect to real assets or lands, they are always in being until disposed of, and the words " *quando acciderint*," therefore, are inapplicable to them.

Immediately upon the death of a debtor in Pennsylvania, his debts of all grades become indiscriminately a lien upon all his lands lying within the state of which he died seised in fee, and continue to be so for a period of seven years, excepting such as our statute of general limitation may happen to run against, and to bar the recovery of them, without suit or other act being done upon the part of the creditors, for the purpose of continuing their lien ; and if within that time, when the debts have become payable, suits be commenced, or if not payable within that space, a statement of them be filed in the prothonotary's office of the county where administration has been taken upon the estate of the deceased, the lien becomes illimitable.    The lands of the debtor being thus made completely chattels for the payment of his debts, although they do not pass into the hands of the executors or administrators as personal assets do, yet they are liable to be seized and taken in execution, and sold upon a judgment had against the executors or administrators, in like manner as personal goods which have come into their hands and possession ; provided the rents, issues and profits beyond reprizes of the land seized should be found insufficient to pay the amount of the execution within the space of seven years.    See *Wilson* v. *Watson*, 1 *Peters's C. C. Rep.* 273.    The lands and personal goods of the deceased may both be seized and sold under the same execution, if necessary to satisfy it.    So that upon the same judgment and execution against a debtor, if living, or against his personal representatives, if dead, the land or personal goods, or both, may be taken in execution and sold.

[Brown v. Webb.]

In England, whenever the ancestor by his obligation binds himself and his heirs by name for the payment of money, and he dies, leaving the debt unpaid, and seised of lands in fee simple equal in value to the amount of the debt, which descend to his heir, an action of debt in the *debet* and *detinet* may be maintained against the heir, against whom a judgment will be rendered personally for the amount of the debt. 2 *Saund.* 7, 8, *note* (4) ; 2 *Bl. Comm.* 156.

In Pennsylvania such an action is unknown, and I take it, cannot be sustained. It would militate against the policy and provisions of our law, which has committed the administration of the deceased's estate to his personal representatives for the special purpose of paying his debts ; and as the means of doing so, has made both the real and personal estate of the deceased liable to be taken in execution and sold ; and in case of its insufficiency to pay all the debts, has required that the moneys arising from the sales of both the real and personal estate shall be apportioned among the creditors of equal grade in like manner as if it were all personal.

Under the act of 1705, all possible titles, contingent or otherwise, in lands where there is a real interest, may be taken in execution. See *Humphreys* v. *Humphreys,* 1 *Yeates* 427; *Hurst* v. *Lithgow,* 1 *Yeates* 24 ; 2 *Dall.* 223 ; *Burd* v. *Dansdale,* 2 *Binn.* 80, 91. It then follows as a necessary consequence, from the principle of making lands and real estate liable to be taken in execution and sold for the payment of debts as personal goods and chattels, and to be appropriated and apportioned as personal assets in the payment of the debts of deceased debtors, that the suits of creditors for the recovery of their debts must, and ought to be commenced and prosecuted against the executors or administrators of the deceased, and not against his heirs. It belongs exclusively to the executors or administrators to take possession of the personal estate, and to collect all moneys which were owing and payable, or may become so in any wise to the estate of the deceased, and to apply the whole in the first place to the payment of the debts. Thus they necessarily become acquainted with the debts owing to the estate, and likewise with their amount. And as the personal assets are to be first applied by them and exhausted, if necessary, in the discharge of the debts, before the real estate is to be resorted to, they are the only persons who can know whether, and what of the debts of the deceased remain unpaid, and whether the real estate is liable and ought to be resorted to or not, and if so to what extent. Hence, of all that have any concern with the estate, the executors and administrators become the best qualified to answer to any suit that may be brought to recover a claim made against the estate of the deceased. Whether it has been already paid in part or in whole out of the personal assets must be known to them, but may not be so to the heirs of the deceased. Or if it should happen to be a claim that was paid by the deceased in his lifetime, the evidence of such payment is more likely to be in the possession or knowledge of the executors or administrators, than of any other person or

[Brown v. Webb.]

persons.   From all which it seems to follow, that they must be better able to defend and protect the real estate of the deceased in the hands or possession of the heirs or devisees or terre tenants from unjust claims, than the heirs, devisees or terre tenants themselves can possibly be.   And in addition to this, when we come to consider, that the estate, both real and personal, may be insufficient to satisfy all the debts, in which case we have seen, that both estates must be applied to the payment of debts, and apportioned among them the same as if the whole were personal assets, according to the order and the grade prescribed by the act of the 19th of April 1794 ; the agency and knowledge of the executors or administrators become indispensably necessary, in order that this may be fairly accomplished, and done without prejudice to the creditors as between themselves, who must be preferred and paid in the following order.   1. Physic and funeral expenses.   2. Rents, not exceeding one year.   3. Judgments. 4. Recognizances.   5. Bonds and specialties.   And next, all other debts, excepting those owing to the state, which are to be last paid. Hence arises, not merely the propriety, but almost the absolute necessity of making the executors or administrators a party to every legal proceeding which shall be commenced for the purpose of collecting a debt due from the decedent at the time of his death, whether it be the real or the personal estate that must be resorted to for the purpose of attaining this end.

It is said  that it is more important to make the heirs or the devisees parties where the real estate is intended to be proceeded against, because they are the persons most materially interested. Admitting this to be so, yet we must recollect that the rights and the interests of the other creditors besides the one suing, who may be presumed to be known to the executors or administrators and not to the heirs, are to be protected and made secure, so far as the estate may be adequate for that purpose ; but without a knowledge of them and their claims this cannot be done.   Besides, there is no reason why the executors or administrators should not be trusted with the defence and protection of the real, as well as the personal estate, against unjust claims in the form of debts.   They would be held responsible to the party injured by their unfaithful and fraudulent conduct in the one case as well as the other ; or if the heirs, devisees or terre tenants shall discover in due time that their interests have been neglected, or are not likely to be attended to by the executors or administrators in a suit against them, or that their interests have been betrayed by collusion with the plaintiff in the suit, they will be permitted, in the names of the executors or administrators, to defend for themselves.   *See Fritz* v. *Evans,* 13 *Serg. & Rawle* 9.   And this, no doubt, would be permitted at any stage of the proceeding before a sale of the property, when the application is made to the court for that purpose as soon as the party shall have notice of such fraudulent conduct or neglect.

In England, although lands may be taken in execution, yet in no

[Brown v. Webb.]

case can they be sold for the payment of debts. The creditor is compelled to be content with waiting until he can receive payment of his debt out of the rents, issues and profits of the land. The ownership of the fee simple undergoes no change. No purchaser of it for a valuable consideration intervenes to claim the protection of the law ; but the land still remains to be taken as the property of the debtor to satisfy his creditors out of the annual rents, issues and profits thereof, according to their seniority of lien, whenever they shall choose to proceed against it by execution. And if a junior judgment creditor should issue his execution first, under which he has one half of all the defendant's lands extended, that cannot prevent a senior judgment creditor from issuing afterwards an execution upon his judgment and taking the same land in execution ; nor can the junior judgment creditor, who issued his execution first, complain of being thereby injured ; for he is only forced to give up the possession of the land to a certain extent after having enjoyed the profits of it for a time, which the senior judgment creditor might, if he had pleased, at first have prevented him taking. He is, in truth, through the neglect or indulgence of him who had a prior right, benefited rather than injured. It is then out of the annual value or profits of the land beyond reprizes that the judgment creditors are to be paid, if they should choose to proceed against it ; and so far as a junior judgment creditor has been permitted to enjoy the annual value of the land under his execution, it is a satisfaction of his debt *pro tanto ;* but the moment that he is superseded by the execution of an older judgment, the increasing satisfaction of his judgment is suspended, and it continues to be a security for whatever may remain unsatisfied of it. Thus it appears, that by proceeding against the heir in England, to enforce the payment of a judgment obtained against the ancestor in his lifetime, as it is out of the annual profits of the land that the creditor is to be satisfied, no injury can arise therefrom to other creditors who may even have preferable claims, because it does in nowise preclude them from proceeding afterwards against the same land. It may not be improper to mention, that although they have in England a statute somewhat similar to ours, prescribing the order of preference in which the debts of a deceased person shall be paid by his executors or administrators, yet it does not extend to or embrace his real estate as ours does. And again, that the old principle of the common law, upon which an action was first sustained, and became necessary against the heir to recover the debt of the ancestor, never existed in this state ; which was this, that the executor or administrator was entitled to the whole of the personal estate, to the utter exclusion of the creditors of the testator, and no alternative was left for them but to proceed against the real estate. 3 *Rep.* 12, *a ;* 2 *Saund.* 7, 8, *note* (4). If it be then, that the cause of proceeding in England is well adapted to carry into effect the ultimate design of their municipal regulations on this subject, it would seem to be almost a necessary inference, that it would be ill suited

[Brown v. Webb.]

to attain the end of our law on the same subject, which has been shown to be so entirely different.

Since lands or real estate have been made goods and chattels for the payment of debts in this state, it has become a great *desideratum*, as often as a judicial sale shall be made of the legal estate in them for that purpose, to have the proceedings so regulated, if possible, as that the sale shall pass a title to the purchaser free from all liens, and claims for, and on account of the debts of the owner, as also of those from and through whom he derives his title, so that they may be held by the purchaser in the same manner, in severalty or otherwise, as they were held by the debtor himself, and discharged of all liens on account of such debts; to the end that persons disposed to buy may know what they are buying, and may be induced to give fair and full prices for them, and thus advance the interest, as well of the creditors as of the terre tenants, or the heirs and devisees of the decedent.

But if such a proceeding as has been had in the present case is to prevail, such object can not be attained. It is a proceeding by *scire facias*, as appears from the evidence given on the trial of the cause, against three of eight children and heirs of *Jonathan Webb* the deceased debtor, and defendant in the original judgment. The plaintiffs in error, who were the defendants below, seem to have only an undivided interest with the other five children in the lands of which *Jonathan Webb* the debtor died seised in fee; and it will scarcely be pretended, that under the judgment rendered against the plaintiffs in error below, that more than their undivided interest in the lands could be taken in execution and sold. Now it is obvious that such an undivided interest would not be a very desirable purchase, and therefore would be likely to produce a great and unnecessary injury to some of the parties concerned: besides, it is possible that a doubt might exist in the minds of some who might be disposed to buy, whether, as it was perhaps only the interest of three of the heirs of *Jonathan Webb* that was selling, the whole estate, including this interest, might not be liable to be sold afterwards as the estate of the deceased, upon a judgment to be obtained by another creditor against the administrators. It is manifest that such a course of proceeding, if not arrested, is calculated to do great injustice to the other creditors of the deceased, if there happen to be any, as well as his heirs.

As having a bearing upon this case, I may refer to what is now to be considered the settled doctrine by this court, in regard to the persons against whom the action must be brought, in order to recover a legacy charged upon land, for which no claim whatever can be made upon the personal estate of the testator, as in the case of debts. Yet the executors must be made defendants to the suit, as well as the devisee of the land. But this is done for the purpose of protecting the creditors of the testator, with whose claims, if there should be any, the executors are presumed to be acquainted; and in case it should become necessary, after a judgment obtained for the amount

3 c

[Brown v. Webb.]

of the legacy, to proceed by execution to sell the land, that it may be sold for a full price, discharged from the lien of the debts of the testator, as well as of the devisee himself, and out of the money arising from the sale, all be paid according to the order of preference prescribed by law, and seniority of lien. See *M'Lanahan* v. *M'Lanahan*, 1 *Penns. Rep.* 112, 113; *Brown* v. *Furor*, 4 *Serg. & Rawle* 217, 218; *Gause* v. *Wylie*, 4 *Serg. & Rawle* 509; *Moore* v. *Rees*, 13 *Serg. & Rawle* 436; *Otty and Wife* v. *Ferguson*, 1 *Rawle* 294.

Now, after having decided that the executors, who have nothing to do with the payment of a legacy charged upon land, must be made defendants in a suit brought to recover it; would it not seem somewhat incongruous, if not inconsistent, to dispense with their being made defendants in a suit to recover a debt against the estate of the deceased, when it belongs to them particularly to ascertain all the debts that exist against the estate, and to have them all paid, or at least so far as the estate may be adequate to it?

But it appears to me, that even admitting that terre tenants, after the death of the defendant in the judgment, may be proceeded against here as in England, that the proceedings and judgment in this case against the plaintiffs in error are erroneous; for it does not appear that *Jonathan Webb* died without leaving heirs, yet the writ of *scire facias* contains no direction whatever to warn his heirs, but to warn the plaintiffs in error as being in possession of his real estate as terre tenants merely; neither does it appear that any previous writ of *scire facias* was issued to warn the heirs; so that there may be heirs of *Jonathan Webb* in full life, having lands which were of the deceased at the time of the judgment, and within the jurisdiction of the court below, and yet no attempt made to warn them.

It is laid down in 2 *Mallory's Ent.* 389, *pl.* 28 (and 18 *Ed.* 2, *Execution* 242; 1 *Roll. Abr.* 900, *Letter R*, *pl.* 2, are cited for it), that "when the conusor is dead and a *scire facias* is sued out against the heir and he is returned dead, a *scire facias* lies against the terre tenant;" from which it might be fairly inferred that it does not lie before. But it is not left to inference, for in the next *pl.* (29) he further expressly declares, that "until it is returned that the conusor *is dead without any heir*, or that the heir is summoned, the terre tenant shall not be summoned, because the heir may have an acquittance," for which he quotes the same authorities, adding *pl.* 3 instead of *pl.* 2, in 1 *Roll. Abr.* 900, *Letter R.*

Sergeant *Williams*, in his note (4), 2 *Saund.* 7, says, "it is the usual way to join the heir and tenants of the land, or, as they are generally called, terre tenants, in the writ of *scire facias*," and refers to *F. N. B.* 597; note (*a*), *Cro. Eliz.* 896; *Heydon's Case*, *Cro. Car.* 295; *Eyres* v. *Taunton*, 2 *Salk.* 598; *Panton* v. *Hall*, *Lill. Ent.* 384, which seem to support his position fully, and at the same time sustain and confirm the proposition that the terre tenants can not be called on to answer without the heir, if there be any, and if there be

none, that that ought to appear by the return of the sheriff to the writ.

I am also inclined to think that the writ of *scire facias* is erroneously defective, in omitting to notice the plaintiffs in error as tenants of lands which were of the said *Jonathan Webb on the day of the date of the judgment;* because as a judgment, according to the laws of this state, it could be a lien upon no other lands; and I take it, that in England it is only the terre tenants of the lands of the deceased, upon which the judgment as such became a lien, who are to be warned; for certainly no other can be made liable to execution under it in the hands of terre tenants, who have become such by purchase for a valuable consideration.    There the judgment binds lands subsequently acquired, and hence the words "or at any time after" are superadded in the writ to the words "tenants of the lands and tenements which were of the said A. B. at the time or on the day of rendering the judgment aforesaid;" but here the judgment binds those lands only of which the defendant was seised at the time of entering it.    *Rundle* v. *Ettwein,* 2 *Yeates* 23.    In England the sheriff is therefore commanded by the writ to make known to the heir of the said A B, and also to the tenants of the lands and tenements which were of the said A B *at the time of rendering the judgment aforesaid, or at any time after,* that they be, &c.    See 2 *Lill. Ent.* 384, 385.    The writ, however, in this case recites, *inter alia,* that the real estate of the said *Jonathan Webb* had been, and still was, in the hands and possession of the plaintiffs in error, without saying when or at what time he was seised of it—whether before, at the date of the judgment, or afterwards; and then directs the sheriff to give notice to the plaintiffs in error by name, calling them also " terre tenants of the lands of the said *Jonathan Webb,* &c. to show, &c. why they should not be made parties to the said judgment, and why the said *Jeremiah Brown* should not have execution against the forge and lands of the said *Jonathan Webb* deceased, in their possession, for the debt and damages, &c."    Now it is manifest, that notwithstanding all that is alleged or suggested in this writ, that although *Jonathan Webb* may have been seised in fee of the forge and all the lands mentioned therein, it may have been before the judgment was obtained, and not at the time of entering it, or any subsequent period whatever.    Where is there then any good cause shown for calling upon the defendants to answer?    The plaintiffs in error, by putting in the plea of payment below, do not appear by that to me to have supplied any defect, or in any degree to have changed the allegations or suggestions, as to this particular, in the writ, for the benefit of the defendant in error.    Neither can I perceive that the verdict of the jury has cured the defects here alluded to, unless the last plea put in by the plaintiffs in error during the trial of the cause below, which is quite as loose and wide of the mark as the writ itself, and seems to have been drawn up with a view to negative those allegations contained in the writ, which I have shown to be quite too

uncertain to form a material issue, be considered as substantially putting in issue the fact, whether or not the plaintiffs in error were the tenants of any lands of which *Jonathan Webb* was seised, and which were bound by the judgment.　If looked upon in this light, then, the verdict is defective and insufficient, because the jury, if they found that the plaintiffs in error were the tenants of any such lands, ought by their verdict to have returned what lands, describing them with reasonable certainty.

All then that is set forth in the writ of *scire facias* as to the plaintiffs in error being tenants of the lands, is perfectly consistent with their having become such by purchase fairly, for a valuable consideration, from *Jonathan Webb*, before the judgment was obtained by *Brown*, in which case it can not be pretended that they could be taken in execution under the judgment.　See 2 *Saund.* 8, *note* (5), and the authorities there cited by serjeant *Williams*.

This court is of opinion that the heir, devisee or tenant can not be called on to show cause why execution should not be had of the lands which they hold, and which were of a decedent at the time of rendering the judgment against him, without first warning, or at least joining the executors or administrators in the writ of *scire facias* and warning them at the same time for that purpose.

The judgment of the court below is reversed.