## Rowland *against* Harbaugh.

The personal representatives of a deceased executor or administrator must be made parties to a *scire facias* upon the transcript of a balance due upon the settlement of the account of such executor or administrator.   If it be issued against the heirs and terre-tenants alone, the plaintiff cannot recover.

A transcript of a balance due by an executor or administrator upon the settlement of his account, must be filed in the lifetime of the accountant; if filed after his death, a *scire facias* cannot be maintained upon it.

ERROR to the common pleas of *Fayette* county.

Jonathan Rowland, executor of Jacob Harbaugh, settled his administration account of the estate of his testator in 1820, by which it appeared there was a balance in the hands of the accountant. Jonathan Rowland died in 1831; and a transcript of the said balance was filed, in pursuance of the act of the 1st of April 1823, in the prothonotary's office in 1833; upon which the writ of *scire facias* in this case issued, at the suit of William Harbaugh, one of the children and heirs at law of Jacob Harbaugh, deceased, against Thomas Rowland, Charles Griffith and wife, children and heirs at law of Jonathan Rowland, and the terre-tenants of the land of which their father died seised.

The only question in the cause was whether this writ of *scire facias* against heirs, upon a transcript entered after the death of the accountant, could be maintained.

The court below sustained the proceedings, which was the error assigned.

*Deford* and *Ewing*, for plaintiff in error.
*Dawson*, for defendant in error.

The opinion of the Court was delivered by

KENNEDY, J.—The question raised in this case is settled in Brown *v.* Webb, 1 *Watts* 411. For, admitting that a *scire facias* might have been sued out upon the transcript of the amount appearing to be due and in the hands of Jonathan Rowland, as the executor of Jacob Harbaugh, deceased, which I think could not well be, as the transcript was not filed in the prothonotary's office until after the death of Jonathan Rowland, it could not be maintained against his heirs without making either his executors or administrators likewise a party to it; and if it be, as is alleged, that there were none, then it was clearly the business of the plaintiff, before suing out the writ, to have seen to it, and to have had letters of administration granted or taken out first.   If the next of kin, who were in the first place en-

[Rowland v. Harbaugh.]

titled to have letters granted to them, either refused or neglected to take them, the creditors of J 'Rowland then became entitled to them, and the register ought, if he had been applied to for that purpose, to have granted them to one or more discreet members of the creditors, or to some other person whom he should have found best qualified to perform the duties and most willing to accept of the office. 4 *Burns Ec. L.* 230; 2 *Bl. Com.* 505; *Salk.* 38; *Toll. Ex.* 104 ; *Gord. on Dec.* 107.

But it is admitted that J. Rowland died as early as 1831, and that the transcript of the amount appearing on the settlement of his account, to be due from him and in his hands as executor of Jacob Harbaugh, was not filed in the prothonotary's office until the latter end of the year 1833 ; therefore, it appears to me, that according to the provisions of the second section of the act of the 1st of April 1823, under which this proceeding by *scire facias* was had, the writ could not have been sustained, even had there been executors or administrators, and they been made parties to it. The words of this section are: " that it shall and may be lawful for the prothonotaries of the courts of common pleas of the respective counties of this commonwealth, to file and docket, for the fee of fifty cents, certified transcripts or extracts of the amount appearing to be due and in the hands of any executor, administrator òr guardian, on the settlement of his, her or their account, in any orphans' court of this commonwealth ; which transcripts or extracts shall be a *lien on the real estate* of such executor, administrator or guardian from the time of such entry until payment, distribution or satisfaction ; and actions of *debt* or *scire facias* may be instituted thereon by any person or persons interested for the recovery of the whole or any part thereof." Now, although by the terms of this section it is not expressly required that the transcript shall be filed in the lifetime of the accountant, in order to authorise the writ of *scire facias* to be sued out, yet it is evident that, unless a *lien* has been created thereby upon his real estate, a *scire facias* is not warranted. The very nature of this writ in such case indicates clearly enough the object of it; which is to warn the party to show cause, if any he has or knows, why the lands *bound by the transcript* should not be taken in execution to satisfy the sum of money appearing to be due thereby. But if the transcript be filed under circumstances which preclude the creation of a lien upon the real estate of the debtor by doing so, it would seem to follow, that the object of suing out the *scire facias* cannot be obtained ; or, in other words, that there can be no award of execution upon it. By the death of J. Rowland, all his debts, which were not so before, became a lien upon his real estate, and payable according to the then existing law (fourteenth section of the act of the 19th of April 1794) in the following order : 1. Physic, funeral expenses and servant's wages. 2. Rents, not exceeding one year. 3. Judgments. 4. Recognizances. 5. Bonds and specialties. 6. All other debts without regard to their quality, (simple-contract

[Rowland v. Harbaugh.]

debts) excepted. 7. Debts due to the commonwealth; which were to be last paid. The debt in question was but a simple contract debt at the death of J. Rowland, and fell within the sixth class of his debts, and as such became then a lien upon his real estate. Graff *v.* Smith's Administrators, 1 *Dall.* 481; Morris *v.* Smith, 1 *Yeates* 238; *S. C.* 4 *Dall.* 119; *Gord. Laws of Deced.* 280. Having thus become a *lien* upon all his real estate, it is clear that the filing of the transcript afterwards could create *no lien*; nor give it any preference over debts of a prior grade against the real estate; because the grade of the debt at the time of the death of the debtor determined the order in which it was to be paid, as well out of his real as his personal estate; and no subsequent act of the creditor could change it. Wootering *v.* Steward, 2 *Yeates* 483; Prevost *v.* Nichols, 4 *Yeates* 479; Scott *v.* Ramsey, 1 *Binn.* 221; *Toll. Ex.* 265, 266, 267; *Gord. Laws of Deced.* 164. So, that without making the act of 1823 repeal the order established by the intestate act of 1794, for paying the debts of deceased debtors, the debt in question could gain no preference whatever by filing the transcript. There is, however, nothing in the act of 1823 that can justify giving to it such repealing effect. If the transcript here had been filed in the lifetime of the debtor or accountant, it would have created a lien for the amount of money appearing to be due thereon upon his real estate; which would have given it a preference at his death, so far as it remained unpaid, against such real estate, to all other debtors, no matter what their grade might have been, that had not become liens thereon anterior to it. The plaintiff then, in case he had not proceeded by *scire facias* against the accountant in his lifetime, might have done so against his administrators after his death, claiming to have execution against the lands of the deceased, which had become bound for the payment of his debt by the filing of the transcript in his lifetime. The *scire facias* in such case is evidently a *limited* proceeding, and confined to the lands or real estate alone *bound by the filing of the transcript;* so that no other can be taken in execution by virtue of the judgment which may be had therein. It is, therefore, as it were, a proceeding *in rem* merely. But seeing that no lien was created here by the filing of the transcript, the only ground, therefore, upon which a *scire facias* could be sustained in such case is wanting, and the judgment must be reversed as well upon this ground as for not having made the personal representatives of J. Rowland a party to the writ.

Judgment reversed.