# Bindley's Appeal.

1. Gregg died in 1857; in 1858, on petition of the administrator, part of his land was sold by order of the Orphans' Court, for payment of debts and distributed. In 1860, on a like petition, a further portion was sold for the same purpose; in 1863, another portion was sold for a like purpose, one of the debts being a judgment against the decedent in his lifetime; the purchaser asked that the sale be set aside on the ground that the lien of the debts had expired. The application was dismissed and the sale confirmed. *Held,* that the proceeds of the sale of 1863 were distributable amongst the heirs to the exclusion of the common creditors, because as to them the lien of their debts had expired.

2. The previous orders of sale although within five years of the death, did not extend the lien of the debts.

3. The court had jurisdiction to order the sale, one of the debts being a judgment which as against heirs was indefinite, and the purchaser took a good title.

4. The presentation of his claim within five years by a creditor before an

auditor distributing under a previous sale, and the receipt of a dividend did not continue the lien.

5. Such presentation was not "an action commenced" within the Act of February 1834.

6. The principal intention of the 24th sect. of the Act of 1834, was to promote security in titles in devisees, heirs and purchasers: no admission however solemn will dispense with an action.

October 2d 1872. Before THOMPSON, C. J., READ, SHARSWOOD and WILLIAMS, JJ.

Appeal from the decree of the Orphans' Court of *Allegheny county*: Of October and November Term 1869: No. 158: In the distribution of the estate of O. Ormsby Gregg, deceased.

The decedent died in February 1857, and administration of his estate was granted to R. Biddle Roberts, who in 1858 obtained an order from the Orphans' Court to sell the real estate of the decedent for the payment of debts, some of which were of record. The administrator sold real estate under this order, and the proceeds were distributed amongst the creditors of the decedent.

On the 14th of September 1860, the administrator again petitioned the court, referring to the former proceedings, and setting out that since then he had ascertained that the decedent had died seised of nine other lots of real estate, and prayed for an order of sale for the payment of the unpaid debts. An order was accordingly granted, to which the administrator returned that he had sold one lot for $280. This sale was confirmed October 27th 1860.

On the 6th of June 1863, the administrator presented a third petition to the Orphans' Court, setting forth the former proceedings, and also that there were "still due of the debts and liabilities" $3226.16, and praying for the sale of the real estate of the decedent, which still was unsold, for the payment of those debts. On the 20th of June, an order for sale for that purpose was accordingly granted, and on the 2d of January 1864, the administrator returned that he had sold part of the real estate to Alexander Chambers, part to other persons named, and that part remained unsold for want of buyers. The sales so reported were confirmed on the same day.

On the 31st of January 1864, Chambers presented a petition to the Orphans' Court, setting forth amongst other things, the above-mentioned sale to him, &c.; he further averred that when the order of sale under which he had purchased was obtained, the decedent had been dead more than five years, and there was therefore no lien which gave the Orphans' Court jurisdiction to decree a sale, and prayed the court to set aside the sale on that ground.

On the same day, the administrator filed an answer to the petition, setting out as was stated in his foregoing petitions, and the

[Bindley's Appeal.]

proceedings under them; he also averred that one of the debts was a judgment recovered against the decedent in his lifetime, on which there was due a balance of about $200, &c., and that therefore the Orphans' Court had jurisdiction to decree the sale. After argument, the petition of Chambers was on the 14th of April dismissed.

In 1868, the administrator filed his final account, in which he charged himself with the proceeds of the real estate not included in the former distribution, and with some personal estate since received. He took credit for the judgment mentioned in his answer, and for expenses of administration, &c., leaving for distribution a balance of $3051.81.

J. B. Sweitzer, Esq., was appointed auditor to report distribution of this balance.

Before the auditor the heirs of the decedent claimed the proceeds of the real estate, alleging that the debts had lost their lien, by the lapse of five years since the decedent's death before the order of sale was obtained.

The auditor concluded his report, saying: * * * "The real estate was sold to pay the debts enumerated in the former report of the auditor, and the money arising therefrom is now on hand for distribution, it matters not here whether they were liens or not. Parties cannot dispute it—the auditor cannot inquire into it, and we therefore reject the claim of the heirs to any part of it, and distribute it among the creditors."

Isaac Gregg, Sidney J. Robinson and Sarah Eaton, brother and sisters and heirs of the decedent, excepted to the distribution of the auditor.

The court overruled the report, and decreed that the proceeds of the sale of the real estate, under the order of sale of June 20th 1863, be distributed amongst the heirs.

John C. Bindley and other creditors appealed to the Supreme Court and assigned this decree for error.

*R. Robb*, for appellant, cited Act of February 24th 1834, § 24, Pamph. L. 77, Purd. 285, pl. 82; McMurray *v.* Hopper, 7 Wright 473; Kerper *v.* Hoch, 1 Watts 9; Hemphill *v.* Carpenter, 6 Id. 23; Micheltree *v.* Veach, 7 Casey 456; Cobaugh's Appeal, 12 Harris 145; 1 Story's Eq. J., § 547; McClintock's Appeal, 5 Casey 360; Sawyers *v.* Hicks, 6 Watts 76.

*J. Mellon*, for appellees.

The opinion of the court was delivered, January 9th 1872, by

SHARSWOOD, J.—It is provided by the 24th section of the Act of February 24th 1834, Pamph. L. 77, that "no debts of a decedent, except they be secured by mortgage or judgment, shall

remain a lien on the real estate of such decedent longer than five years after the decease of such debtor, unless an action for the recovery thereof be commenced and duly prosecuted against his heirs, executors or administrators, within the period of five years after his decease."

The court below were right, we think, in holding that the order of the Orphans' Court for the sale of the real estate of the decedent, though within the five years, did not extend the limitation of the lien, and that after that period, and before the sale, the five years having expired, the lien of the debts was gone as against the heirs at law. This results very plainly from the language of the act and from the principle established in Maus *v.* Hummel, 1 Jones 228, where it was held that when suit is brought within the time, yet if the land is not taken into execution within five years from its expiration, it vests absolutely in the heirs, and that a purchaser at a sheriff's sale, subsequent to such expiration upon a proceeding commenced within the first seven years (as it was then—five now) acquires no title. It by no means follows, however, that the purchaser at the Orphans' Court sale in this case did not obtain a perfectly good title—since the court had undoubted jurisdiction to order the sale without limitation of time by virtue of the existence of a judgment entered against the decedent before his death, and which appeared of record to be unsatisfied—the lien of which is as against his heirs indefinite. The purchaser was bound to inquire no further.

It only remains to consider whether the appellant, having presented his claim before the auditor appointed to report distribution of the proceeds of a sale made under a previous order of the Orphans' Court within the five years, and had a *pro rata* dividend awarded to him, and confirmed by the court, his lien on the real estate of the decedent was thereby kept alive and continued. The words of the act, as we have seen, are, "unless an action for the recovery thereof be commenced and duly prosecuted." These are strictly technical words, and according to the well established canons of interpretation, should be received in their technical signification : 1 Black. Com. 59, note. It is now, however, contended, although it is a ground which does not appear to have been taken in the court below, that the claim before the auditor was an action commenced against the administrator, and duly prosecuted to a decree—that the Act of Assembly does not speak of actions at common law—or in a court of common-law jurisdiction. Any *querela*, any lawful complaint in any competent court, will literally answer the words of the act. At all events, if not within the letter it is within the spirit of the law. The appellant has given notice of his debt against the estate in a mode pointed out and authorized by law. There is great plausibility in this contention. We should remember, however, that the principal

intention of the 24th section of the Act of 1834 was to promote
the security and repose of titles in the hands of heirs and devisees
as well as purchasers from them, and we think that it would im-
peril these objects to give the section so broad a construction as
that now contended for.   The leaning of this court, through the
whole current of the numerous decisions upon this subject, has
evidently been to favor the heir, and to require of the creditor the
vigilant prosecution of his demand in the mode pointed out.   It is
evident that no admission, however solemn, will dispense with an
action.   An award, with all its conclusiveness equal to that of a
judgment, would manifestly be inoperative.   In illustration of
this general remark, it will be sufficient to refer to the decision in
Kerper v. Hoch, 1 Watts 9, considered by many of the foremost
men of the bench and the bar, at the time, to have been rather an
act of judicial legislation than of construction, and to the cases of
Trevor v. Ellenberger's Ex'rs., 2 Penna. Rep. 94, and Penn v.
Hamilton, 2 Watts 53, in which the provisions of the Act of April
4th 1793, 3 Sm. L. 331, limiting the lien of judgments and pro-
viding for their revival by scire facias, though admitted to be
inapplicable to a judgment against the personal representatives of
a decedent, were extended by analogy to such a judgment: other-
wise it might have followed that an action commenced against the
personal representatives within five years from the death of the
decedent, and duly prosecuted, would have continued the lien of
the debt indefinitely.   It was decided in McCurdy's Appeal, 5
W. & S. 397, that this lien is subject to the same limitation in
the hands of an administrator who has paid the debts out of
his own funds, as they are in the hands of the original creditors;
Loomis's Appeal, 5 Casey 237; Demmy's Appeal, 7 Wright 155;
and it was barely held in Bredin v. Agnew, 8 Barr 233, that the
substitution of the administrator of a decedent in a suit pending
against him at the time of his decease, was in effect a new action;
because at common law the suit abated, and the plaintiff was
necessarily turned round to a new action, but that the 26th and
27th sections of the Act of February 24th 1834, Pamph. L. 77,
providing in such cases that the personal representatives may be
substituted or be compelled to come in by scire facias, might still
with the strictest propriety be considered as a recommencement of
the action.   These considerations, we think, plead with sufficient
force against the construction now set up on behalf of the appel-
lant, without adverting to the practical difficulties which appear to
impede the way in keeping alive the lien (when no action in the
proper sense has been commenced) beyond the ten years immedi-
ately succeeding the death of the decedent.   It is best, on the
whole, in a question of this character, to adhere to the words in
their obvious technical sense.   It may be that many an innocent
bonâ fide purchaser for value from an heir or devisee, relying on

the plain words of the statute, and finding no action commenced within the five years, and no sale by order of the Orphans' Court within that period, has accepted the title without considering it to be necessary to examine the record of the settlement of the administration account.

> Decree affirmed, and appeal dismissed at the costs of the appellants.