## Keating *v.* Peddrick, Appellant.

*Decedents' estates—Lien of debts—Bond securing annuity—Act of June 8, 1893, P. L. 392.*

Where a person executes a bond conditioned for the payment of an annuity and charges such payment on particular real estate specified, and acknowledges and records the bond, and thereafter devises the land described in the bond to certain devisees, subject to the payment of the annuity the devisees take the land *cum onere,* and will be subject to pay the annuity although the annuitant did not bring suit or file a copy of the bond in the prothonotary's office within two years after the death of the maker.

Argued Oct. 17, 1912. Appeal, No. 99, Oct. T., 1912, by defendant, from order of C. P. No. 1, Phila. Co., March Term, 1910, No. 3,897, discharging rule to stay execution in case of Ellen Keating v. Frances B. Peddrick and Ada Russell Baxter, Surviving Executrices and Trustees under the will of John Baxter, deceased. Before RICE, P. J., HENDERSON, MORRISON, ORLADY, HEAD and PORTER, JJ. Affirmed.

Rule to stay writ of venditioni exponas.

MAGILL, J., filed the following opinion:

December 8, 1865, John Baxter executed and de-

livered to Ellen Arnold (now Keating), plaintiff herein, an instrument under seal in the form of a bond, wherein he declared himself indebted to Ellen Arnold in the sum of $8,000, binding himself, his heirs, executors and administrators for the payment thereof, and the instrument further containing the following provisions.

"This obligation is given and accepted upon the condition that if I, the said John Baxter, my heirs, executors or administrators shall well and truly pay or cause to be paid to the above named Ellen Arnold the sum of $500 per annum in equal quarterly payments, that is to say $125 at the end of each succeeding three months after the date hereof (ten days' grace being reserved as to each and every payment), during her natural life, such payments not to be anticipated by assignment hereof by the said Ellen Arnold, they being intended for her support during her lifetime, and upon the further condition that this bond shall not be a lien or incumbrance upon any real estate or ground rents belonging to me, but upon the following referred to parcels now belonging to me, that is to say (here describing several properties by reference to deeds conveying the same). And upon the above condition being faithfully fulfilled, then this obligation to be void; else to remain in full force and virtue." This instrument was executed, sealed and acknowledged by John Baxter, who afterwards, on May 22, 1868, caused the same to be recorded in the office of the recorder of deeds of Philadelphia county in Mortgage Book J. T. O., No. 82, p. 32. He paid the said quarterly payments of $125 to the plaintiff, up to the time of his death.

June 25, 1893, John Baxter died, having first made his will dated December 28, 1891, duly registered, wherein he appointed the defendants herein (with their sisters now deceased), executors and trustees to hold all of his property, real and personal, in trust, to let and manage the real estate, to invest the personal estate, to collect the rent and income, and after paying the taxes, water rents, interest, annuities, and all necessary repairs, to

pay over the net proceeds to his daughters, and to the issue of such of them as shall be deceased, etc. At the time of his death he was seized of several of the properties mentioned in the obligation given to the plaintiff, and since his death the plaintiff has, at the request of the executors, released several of said properties from the lien of the above-mentioned obligation.

The defendants, as executors and trustees, after the death of their father, continued to pay to the plaintiff the annuity in accordance with the terms of the obligation until December 8, 1908, at and since which time they have declined and refused to pay the same.

This action was brought as of March Term, 1910, to recover the sum of $750 arrears of said annuity or quarterly payments then alleged to be due. To the statement of claim filed by plaintiff the defendants filed an affidavit of defense admitting the execution of the instrument in question, the payment of the annuity thereunder until December 8, 1908, their failure and refusal to make any payments thereafter, and denying their liability for the payment of same by reason of the fact, as alleged, that the lien of plaintiff's claim for annuity upon the real estate of the decedent had been lost by reason of her failure to comply with the terms of the Act of Assembly of June 8, 1893, P. L. 392. A rule for judgment for want of a sufficient affidavit of defense was entered, made absolute, and judgment was entered in favor of the plaintiff for the amount of her claim with interest. Thereafter a fi. fa. was issued, returned nulla bona; an alias fi. fa. was issued under which the sheriff was directed to levy upon and condemn, and he did so levy and condemn, certain of the real estate held by the defendants as trustees under the will of John Baxter, and being part of the premises described in the obligation given by the said John Baxter to the plaintiff. Thereafter a vend. ex. was issued and this rule was taken by the defendants to stay the same.

It is contended by counsel for defendant that plain-

tiff is not entitled to have execution of the real estate in question, of the deceased, by reason of the fact that proceedings were not taken to charge or to continue the lien upon the real estate, in accordance with the provisions of the Act of June 8, 1893, P. L. 392, which provides, "Section 1, That no debts of a decedent dying after the passage of this act, except they be secured by mortgage or judgment, shall remain a lien on the real estate of such decedent longer than two years after the decease of such debtor, unless an action for the recovery thereof be commenced against his heirs, executors, or administrators, within the period of two years after his decease, and duly prosecuted to judgment, or a copy or particular written statement of any bond, covenant, debt or demand, where the same is not payable within the said period of two years, shall be filed within the period of two years in the office of the prothonotary of the county where the real estate to be charged is situate, and then to be a lien only for the period of two years after said bond, covenant, debt or demand becomes due. And it shall be the duty of the prothonotary of said county, when a statement as aforesaid is filed in his office, to index the same in the judgment docket as other liens are indexed."

The obligation upon which this suit is founded is in the form of a bond, without warrant of attorney to confess judgment, its object being to secure to plaintiff the payment of an annuity of $500 in quarterly payments of $125, during the term of her life, and upon failure to pay the same, to secure to her payment of the principal sum of $8,000. By the instrument in question it was expressly provided that it should not create a general lien upon all of the obligor's real estate, but that it should create and be a lien upon certain of his real estate therein specifically described.

This instrument was by the obligor himself filed for record and recorded in the office for the recording of deeds of Philadelphia county. From this act of the

obligor it would clearly appear to have been his intention first to relieve his land not therein mentioned from the possibility of lien, and secondly, to charge the land therein mentioned and described with the payment of the annuity, and to create a lien on said land for the payment of the same and the security of the obligee or annuitant against the possibility of loss by reason of subsequent liens, incumbrances, or conveyances. He expressly stipulated in the instrument that "it shall be a lien upon the five parcels described," etc., and that "it is given and accepted upon the condition that if I, the said John Baxter, my heirs, executors and administrators shall well and truly pay or cause to be paid to the above named Ellen Arnold the sum of Five Hundred Dollars per annum during her natural life, etc. . . . and upon the above condition being faithfully fulfilled, then this obligation to be void, else to remain in full force and virtue."

Thus we find in the instrument itself an obligation to pay a fixed annual sum in quarterly payments, a pledge of the land therein described as security for the payment thereof, and a condition of defeasance, followed by a recording of the instrument as notice of the fact that a pledge of, or lien upon the land described therein was thereby intended to be created.

That a lien or charge upon the land for the payment of the annuity, or quarterly payments, might have been created by deed in ordinary form cannot be questioned. Is it not true that the same object was accomplished by recording the instrument in suit, which though in the form of a bond, nevertheless clearly expressed the intention of the deceased to charge his land therein described with the payment of the obligation? If a mortgage in the ordinary form had accompanied the bond or obligation, could it more effectually have charged or pledged the land for payment of the obligation than was done by the recording of the instrument in question, in which the intention to charge or create a lien upon the land was clearly expressed? The legal effect of recording the in-

strument was not only to create a charge or lien upon the land, but also to give notice of the fact of its existence, and any subsequent purchase, mortgage or judgment would be subject to the lien thus created.

It is conceded by counsel for defendant that if the annuity had been secured by a mortgage in the usual form, the act of June 8, 1893, would not apply, and that the charge or lien upon the land would remain until satisfied by actual payment, or the death of the plaintiff; but it is contended that the instrument in question is not a mortgage but an obligation for the payment of a debt, and should therefore have been filed of record in the office of the prothonotary within two years after the death of the defendant, and that by failing to do so the lien is lost and execution of the land cannot be had.

We fail, however, to see how a lien or charge upon the land could be more effectually created by the filing of the instrument in the office of the prothonotary than was done by the recording of the instrument by the obligor himself in the office of the recorder of deeds. Moreover, this was not an instrument to secure payment of a sum certain due, or to become due at a fixed period, but rather an instrument to secure payment of an annual sum to become due in quarterly payments for perhaps a long period of years, to wit: during the lifetime of the plaintiff.

In determining whether the instrument in question comes within the exception of the act of June 8, 1893, we must consider the substance and intent, rather than the form of the instrument.

In Dexter's Appeal, 81 Pa. 403, in passing upon the effect of an agreement to charge a dower interest upon certain land, it is said, "It matters not what name we give to the agreement between the parties . . . . whether a mortgage, a rent charge, annuity, or what. It is an instrument under seal admitting an estate in the widow in the land at the time of the amicable partition proceedings among the children, and charging the land with

the payment of the annual sum to her in lieu thereof, according to the terms of the writing. . . . Now that an incumbrance may be fixed upon land by deed, following it into the lands of subsequent purchasers, is too well settled to require a citation of precedents. Such is the nature of a mortgage, of a ground rent deed, of an annuity, and of a subjection by the terms of a conveyance. It is the direct act of the owners of the land whereby they fix a charge upon it and is quite as effective as the lien of a judgment which is a mere incident at law."

In 27 Cyc. 1078, it is said: "No particular form is necessary to constitute a mortgage of land, nor is the employment of any precise formula of words essential to it. It is only requisite that the instrument should evince a present purpose on the part of the grantor or mortgagor to convey the title to specified real estate sufficiently described to a designated person as mortgagee, to be held by the latter as security for the payment of a certain sum of money or for the performance of some other act on the part of the mortgagor."

In Scott v. Fields, 7 Watts, 360, it is said: "A mortgage in its origin, was a conveyance of land, with a condition annexed that, on payment of a sum of money by the grantor to the grantee on a certain day, the conveyance should be void, and the grantor become reinvested with his estate."

In Jones on Mortgages, sec. 60, it is said: "No particular form is necessary to constitute a mortgage. It must be in writing, must clearly indicate the creation of a lien, specify the debt to secure which it is given and the property upon which it takes effect. Fulfilling these four conditions it is immaterial that the mortgage should be embraced in one instrument."

And in sec. 166: "An instrument which does not transfer the legal estate may yet operate as an equitable transfer of it in the nature of a mortgage. . . . An agreement in an agreement of lease that the lessor is to have a lien upon certain property for the faithful performance

of the lessee's obligation to pay rent, is in effect a mortgage. Citing 16 Iowa, page 422."

And in sec. 168: "Any agreement between the parties in interest that shows an intention to secure a lien may be in equity a mortgage. . . . As stated by Judge STORY, 2 Sum., p. 486, if a transaction resolves itself into a security whatever may be its form and whatsoever name the parties may choose to give it, it is in equity a mortgage.

In this case we have the making, sealing, delivering, and recording of an instrument by an obligor, creating an annuity or rent charge, or acknowledgment of an obligation, with a declaration that it is to be charged as a lien against his land therein described until satisfied and with a clause of defeasance. This created a lien or charge upon the land, not only as against the obligor, but also as against subsequent purchasers or judgment creditors, as well as heirs or legatees of the obligor.

This in our opinion constitutes a mortgage within the meaning of the Act of June 8, 1893, P. L. 392, and relieved the plaintiff from the necessity of filing the obligation upon which this suit is founded, in the office of the prothonotary, or proceeding to judgment thereon within two years after the death of the obligor, as provided by said act.

Moreover, it is to be observed that the defendants are mere volunteers who, as executors, trustees and devisees under testator's will take the land subject to a charge created and placed upon it by him in his lifetime, and as was said in Rushton v. Lippincott, 119 Pa. 12, "Where a testator has charged his real estate with the payment of a debt, his heirs take it cum onere. It is a charge placed upon it by the decedent himself which binds it in the hands of his heirs and runs with the land forever and in every change of ownership."

And again in Horner v. Hasbrouck, 41 Pa. 169, it is said: "In Pennsylvania the lands of a decedent, like his goods, are assets for payment of his debts, and the right of succession has respect only to so much of the

136        KEATING *v.* PEDDRICK, Appellant.

Opinion of Court below—Opinion of the Court.   [52 Pa. Superior Ct.

estate as remains after the payment of debts.   An heir or devisee is but a volunteer and takes only the surplus of his ancestor's estate.   He is not a terre-tenant."

In McLaughlin v. Ihmsen, 85 Pa. 364, it is said: "The thirty-fourth section of the act of 1834, limiting the lien of debts against the real estate of decedent, applies to the general estate descended to his heirs, but does not relieve the property specifically pledged for the payment of a debt by the decedent which estops his heirs, who are mere volunteers from averring anything contrary to his deed."

We therefore conclude that the testator having, in his lifetime, charged the land in question with the payment of the annuity created by the instrument upon which this suit is founded, the said land passed to the defendants, subject to the lien of the annuity so charged. And that this was the intention of the testator is clearly shown by his will, wherein he devises all his lands to his daughters as executors and trustees, subject to the payment of annuities before distribution among devisees and beneficiaries named in said will.

The rule to show cause why the writ of venditioni exponas should not be stayed is discharged.

*Error assigned* was order of the court.

*Walter Biddle Saul*, for appellants.

*George H. Harkins, Jr.*, with him *George W. Harkins*, for appellee.

PER CURIAM, November 18, 1912:

In the lucid opinion of the common pleas, rendered by Judge MAGILL, the refusal to stay the writ was put on two grounds, one of which was that the instrument in question is a mortgage within the meaning of the Act of June 8, 1893, P. L. 392.   While the terms of the instrument and the action of the maker in procuring the recording of it show quite clearly an intent on his part to

incumber the specifically described land with a charge which should run with the land and continue during the lifetime of the annuitant, it must be conceded that the instrument is not in terms nor in legal effect a conveyance of land, and therefore lacks one distinguishing characteristic of a mortgage as understood in Pennsylvania. And if that word in the act of 1893 be taken in its "obvious technical sense," which was said in Bindley's App., 69 Pa. 295, to be the true rule for construing the similar provision of the Act of Feb. 24, 1834, P. L. 70, it is difficult to avoid the conclusion, for which appellants' counsel contends, that the case is not strictly within the clause of the act excepting debts secured by mortgage or judgment from its operation.   We are impressed with the force of the reasoning of the learned judge in support of the conclusion that the instrument is in substance and effect a mortgage, but for the reasons suggested we are not prepared at this time to go to that extent.  Therefore, it is necessary to consider the other ground upon which the refusal to stay the writ was based, which is, that the testator having in his lifetime charged the land in question with the annuity, with the manifest intention that the charge should run with the land, and having further manifested his intention to perpetuate the charge beyond his life, if the annuitant should survive him, by devising his land to the defendants as executors and trustees, subject to the payment of annuities, the defendants took the land cum onere, and still hold it subject to the charge, notwithstanding the fact that the plaintiff, the annuitant, did not bring suit or file copy of the instrument in the prothonotary's office within two years after the death of the maker.   This conclusion is well supported by the reasoning of the learned judge, and in our judgment is in accordance with principles enunciated in cases which are as applicable under the act of 1893 as they were under the act of 1834.  We deem it unnecessary to add anything further to his opinion.

The order is affirmed at the costs of the appellants.